**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GIGI SOUTHWOOD** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 19-2569** |
| **v.** | : | |
| | : | |
| **MILESTONE MANAGEMENT** | : | |
| **PA-FEASTERVILLE, LLC**, *et al*. | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                 SEPTEMBER 15, 2020

# MEMORANDUM OPINION

**INTRODUCTION**

Before this Court is a *joint motion for approval of settlement agreement*, [ECF 17], with respect to claims brought by Plaintiff Gigi Southwood ("Plaintiff") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Cons. Stat. § 333.101 *et seq*.  For the reasons stated herein, the joint motion for approval of the Settlement Agreement is granted.

**BACKGROUND**

Defendant Ridgecrest Operating, LP d/b/a Symphony Manor of Feasterville ("Ridgecrest") owned a nursing and assisted living facility in Feasterville, Pennsylvania that was operated by Defendant Milestone Management PA-Feasterville, LLC ("Milestone").  Plaintiff worked at the facility as a Medication Technician until her termination on September 27, 2018.  On June 13, 2019, Plaintiff filed this lawsuit in which she alleges that Defendants violated the FLSA and PMWA by failing to properly compensate her for all of the hours she worked.  Specifically, Plaintiff alleges that Defendants made inaccurate alterations to certain reports Plaintiff made documenting her hours

working, resulting in the underpayment of overtime wages. Plaintiff also alleges that Defendants' engaged in this conduct willfully.

Defendants filed an answer to the complaint denying Plaintiff's allegations, and asserting thirteen affirmative and other defenses. Defendants deny all wrongdoing and, specifically, deny improperly altering any of Plaintiff's time or pay records. Defendants also maintain that all of their actions were done in good faith and with reasonable grounds for believing they were in compliance with the FLSA and PMWA.

Following the parties' initial conference, they began discussing a possible resolution of Plaintiff's claims. To facilitate these discussions, the parties exchanged documents and information concerning the facts underlying Plaintiff's claims, including Plaintiff's time, pay, and scheduling records. This exchange gave the parties a clear understanding of the nature and viability of the asserted claims and defenses in this case. With this information, the parties engaged in rigorous, arms-length settlement negotiations, each represented by counsel experienced in wage-and-hour matters like the case *sub judice*. The negotiations resulted in a settlement memorialized in a written proposed Settlement Agreement and Specific Release of Claims (the "Settlement Agreement"). The parties now seek this Court's approval of the proposed Settlement Agreement.

**DISCUSSION**

Although the United States Court of Appeals for the Third Circuit ("Third Circuit") has yet to address the issue, district courts in this Circuit have followed the position taken by the United States Court of Appeals for the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982). There, the Court held that court approval is required for proposed

settlements in a FLSA lawsuit filed pursuant to 29 U.S.C. § 216(b).[1]  Judicial review of a proposed settlement agreement requires the court to scrutinize the proposed settlement agreement of the parties and determine if it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc.*, 679 F.2d at 1355.  "A proposed settlement agreement resolves a bona fide dispute if it 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute' and is not a 'mere waiver of statutory rights brought about by an employer's overreaching.'" *McGee v. Ann's Choice, Inc.*, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014) (quoting *Lynn's Food Stores*, 679 F.2d at 1354).  Judicial review also requires determination of whether the settlement agreement furthers or "impermissibly frustrates" implementation of the FLSA in the workplace. *Lyons v. Gerhard's Inc.*, 2015 WL 4378514, at *3 (E.D. Pa. July 16, 2015) (citations omitted).  Having reviewed the parties' proposed Settlement Agreement, this Court is satisfied that it is both a "fair and reasonable resolution of a bona fide dispute over FLSA provisions," and further does not impermissibly frustrate implementation of the FLSA in the workplace.

### *Proposed Settlement Agreement is Fair and Reasonable Settlement of Bona Fide Dispute*

As noted, as a threshold issue, this Court must determine whether the parties' dispute is a "bona fide" dispute.  "A dispute is 'bona fide' where it involves factual issues rather than legal issues such as the statute's coverage and applicability." *Kraus*, 155 F. Supp. 3d at 530.  "In essence, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Id.*; *see also Berger v. Bell-Mark Techs. Corp.*, 2019 WL 1922325, at *3 (M.D. Pa. Apr. 30, 2019) ("A

---

[1]  *See also*, *e.g.*, *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464 (E.D. Pa. 2012); *Morales v. PepsiCo, Inc.*, 2012 WL 870752 (D.N.J. Mar. 14, 2012); *Bettger v. Crossmark, Inc.*, 2015 WL 279754 (M.D. Pa. Jan. 22, 2015).

bona fide dispute is one in which there is some doubt whether the plaintiff would succeed on the merits at trial.").

Here, this Court is satisfied that a bona fide dispute exists as to both Defendants' liability and Plaintiff's damages under the FLSA. As evidenced by the complaint and Defendants' answer and affirmative defenses, this action involves disputed issues of fact as to whether Defendants properly processed Plaintiff's reports of hours worked and/or properly paid her for all overtime earned. Based on the pleadings, it is clear that a bona fide dispute exists regarding the validity of Plaintiff's claims and Defendants' defenses thereto.

Having determined that a bona fide dispute exists, this Court turns to whether the proposed Settlement Agreement provides a fair and reasonable resolution of that dispute. When determining whether a proposed settlement is fair and reasonable, courts in this Circuit consider the Third Circuit's nine-factor test for evaluating proposed class action settlement agreements, *i.e.*, the *Girsh* factors. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Lyons*, 2015 WL at *4. The *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendant to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 258 (citing *Girsh*, 521 F.2d at 157). No one factor, however, is dispositive. *Hall v. Best Buy Co.*, 274 F.R.D. 154, 169 (E.D. Pa. 2011). Because *Girsh* was a class action, some of the factors are of "little help, if not irrelevant in the single-plaintiff context." *Howard v. Phila. Housing Auth.*, 197 F. Supp. 3d 773, 777 n.1 (E.D. Pa. 2016). This Court

finds that factors 1, 3-5, and 8-9 are relevant to this single-plaintiff action and that they weigh in favor of approval of the proposed Settlement Agreement.

### *Relevant Girsh Factors*

*Factor 1: The complexity, expense and likely duration of the litigation*

Needless to say, had this settlement not been reached, this matter would have proceeded to trial to determine the merits of Plaintiff's claims and Defendants' liability and damages, if any. The continued prosecution of Plaintiff's claims would have required significant additional expense and a substantial delay before any potential recovery. Further, no matter the outcome of a trial, it is likely that either one or both parties would have filed an appeal, leading to further litigation costs and delay in any realized recovery. Thus, the avoidance of the unnecessary expenditure of time and resources benefits the parties and weighs in favor of approving the proposed settlement. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Lit.*, 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and potential opposition by the defendant weigh in favor of approving settlement).

*Factor 3: The stage of the proceedings and the amount of discovery completed*

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001). When evaluating the third *Girsh* factor, courts must evaluate the procedural stage of the case at the time the proposed settlement was made to assess whether counsel adequately appreciated the merits of the case while negotiating. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "[C]ourts generally recognize that a proposed class settlement is presumptively valid where . . . the parties engaged in arm's length negotiations after meaningful discovery." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144-45 (E.D. Pa. 2000).

Settlements reached following discovery "are more likely to reflect the true value of the claim." *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *Bell Atl. Corp.*, 2 F.3d at 1314).

As set forth above, this case has been actively litigated for almost a year. Prior to reaching a settlement, the parties exchanged documents and information in response to each other's discovery requests. As a result of that discovery, the parties had ample opportunity to identify and grasp the strengths and weaknesses of each party's case. Consequently, this Court finds that this factor weighs in favor of approval.

*Factor 4: The risks of establishing liability*

This *Girsh* factor weighs the likelihood of ultimate success against the benefits of an immediate settlement. The existence of obstacles, if any, to a plaintiff's success at trial weighs in favor of settlement. *In re Warfarin*, 391 F.3d at 537.

Here, Defendants deny liability and disputed the number of hours Plaintiff alleged to have worked. If this case were to proceed to trial, it is possible that Plaintiff may not establish Defendants' liability and, therefore, obtain no recovery. The proposed settlement avoids the risk that Defendants may not be found liable. Thus, this Court finds that this factor weighs in favor of approval.

*Factor 5: The risks of establishing damages*

This factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant*, 264 F.3d at 238-39. As with the fourth factor, the proposed settlement will allow Plaintiff to obtain prompt financial relief. Were this case to proceed, it is possible that Plaintiff may fail to establish any damages, may establish damages in an amount less than the amount she will recover by way of the settlement, or may have established liability only to have the judgment appealed. In light of this uncertainty regarding damages, the proposed settlement

amount (which represents 54% of the amount Plaintiff claims to be owed) is a positive result. Accordingly, this factor weighs in favor of approval.

*Factors 8-9:  The range of reasonableness of settlement in light of best and possible recovery and all attendant risks of litigation*

Often considered together, the last two *Girsh* factors evaluate whether the settlement agreement represents a good value for a weak case or a poor value for a strong case.  *In re Warfarin*, 391 F.3d at 538.  In order to assess the reasonableness of a settlement in cases seeking monetary relief, "the present value of the damages plaintiff[] would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement."  *In re Prudential Ins. Co. American Sale Practice Litig. Agent Actions*, 148 F.3d 283, 322 (3d Cir. 1998).

In light of the questions of fact and law present in this litigation, the value of the proposed settlement substantially outweighs the mere possibility of future relief.  As noted, Plaintiff's recovery under the proposed Settlement Agreement represents 54% of the amount she claims to be owed.  This settlement amount is reasonable in light of the attendant risk that Plaintiff may not obtain *any* recovery if this case proceeded through trial.  Thus, these factors weigh in favor of approval.

To summarize, in light of the presumption of fairness that attaches to the settlement, *see In re Warfarin*, 391 F.3d at 539, and upon consideration of each of the *Girsh* factors mentioned, this Court finds that the parties' proposed Settlement Agreement is fair and reasonable.

***The Proposed Settlement Agreement Does Not Impermissibly
Frustrate Implementation of the FLSA***

This Court also finds that the proposed Settlement Agreement does not impermissibly frustrate implementation of the FLSA in the workplace.  In reaching this conclusion, this Court has examined both the release of claims and the confidentiality provision contained in the proposed Settlement

7

Agreement.  The release of claims is limited to claims that were raised or could have been raised in this lawsuit and wage-and-hour-related claims arising before the date of the proposed Settlement Agreement.  Such a narrowly-tailored release does not frustrate implementation of the FLSA.  *See Bettger v. Crossmark, Inc.*, 2015 WL 279754, at *8 (M.D. Pa. Jan. 22, 2015) (collecting cases approving FLSA settlements where release limited to "claims related to the specific litigation"); *Kutz v. Cargill Cocoa & Chocolate, Inc.*, 2019 WL 5457776, at *8 (M.D. Pa. Oct. 23, 2019) (approving an agreement "limited to the release and discharge of claims asserted in the lawsuit or claims that could have been asserted in the lawsuit").  Similarly, the release in this case is sufficiently limited in scope so as to not impermissibly frustrate implementation of the FLSA.

The proposed Settlement Agreement's confidentiality provision is also sufficiently limited in scope.  Specifically, the provision is limited solely to disclosures of the terms of the proposed Settlement Agreement by Plaintiff and her counsel to the press and public-facing media.  District courts in this Circuit have found such confidentiality provisions sufficiently limited in scope.  *See, e.g., McGee v. Ann's Choice, Inc.*, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014); *Chickie & Pete's, Wage & Hour Litig.*, 2014 WL 911718, at *3 (E.D. Pa. Mar. 7 2014).  Notably, the proposed Settlement Agreement and all of the filings in this case are publicly available.  Accordingly, this Court finds that the Settlement Agreement, including release and confidentiality provisions, do not frustrate implementation of the FLSA.

### *Request for Attorneys' Fees and Expenses*

As compensation for their legal services and efforts, Plaintiff's counsel request that this Court approve the portion of the proposed Settlement Agreement that provides for reimbursement of attorneys' fees and costs in the amount of $7,483.75.  This amount represents a fee in the amount of 35% of the settlement amount—a contingency fee contemplated and agreed to by Plaintiff and her

counsel at the outset of their representation.  In support of the request, Plaintiff's counsel relies upon the Affidavit of Attorney Preeya Bansal ("Bansal Affidavit"), attached to the motion, to establish the reasonableness of the fee.  [ECF 17-2].

Section 16(b) of the FLSA provides that the court "shall, in addition to any judgment awarded to the plaintiff . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).  Courts within this Circuit have predominantly used the percentage-of-recovery method, in which a fixed portion of the settlement fund is awarded to counsel, in order to determine a reasonable attorney's fee in wage and hour cases.  *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 533 (E.D. Pa. Jan. 11, 2016).  The factors which the court considers under the percentage-of-recovery method to evaluate the appropriateness of an attorneys' fee aware are:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id*. (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)).  These factors need not be applied in a formulaic way, and one factor may outweigh the others.  *Id*.

The application of the relevant factors listed above weighs in favor of approving the requested amount of attorney's fees.  This settlement, unlike the class action settlements contemplated by the above factors, benefits a single plaintiff who has agreed to its terms.  Plaintiff's counsel has extensive experience in similar complex hour and wage litigation.  The proposed Settlement Agreement provides for attorneys' fees and costs in the amount of $7,483.75, which represents a 35% contingency fee for Plaintiff's counsel, as agreed.  This percentage fee falls within the range of

attorneys' fees awarded in similar cases. *See, e.g.*, *Schwartz*, 2017 1386251, at *5. Accordingly, this Court finds that these factors weigh in favor of approval.

### *Lodestar Cross-Check*

In percentage-of-recovery cases, such as this one, the lodestar method is sometimes used to "cross-check the reasonableness of a percentage-of-recovery fee award." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 330 (3d Cir. 2011). Under the lodestar method, a court begins the process of determining the reasonable fee by calculating the "lodestar;" *i.e.*, the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, (1983); *see also McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009). Once the lodestar is determined, the court must then determine whether additional adjustments are appropriate. *McKenna*, 582 F.3d at 455.

A reasonable hourly rate in the lodestar calculation is "[g]enerally . . . calculated according to the prevailing market rates in the relevant community," taking into account "the experience and skill of the . . . attorney and compar[ing] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). The prevailing market rate is usually deemed reasonable. *Pub. Interest Research Grp. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995).

As revealed in the Bansal Affidavit, the hourly rates for Plaintiff's counsel are well within the range of what is reasonable and appropriate in this market. That is, the hourly charged rates for the attorneys are the same as the regular, current rates charged for their services in standard non-class matters, including contingent and non-contingent matters. The attorneys have substantial experience in FLSA cases, and their hourly rates are also within the range charged by other attorneys with

comparable experience levels for litigation of a similar nature. *See, e.g., Barel v. Bank of Am.*, 255 F.R.D. 393, 403-04 (E.D. Pa. 2009).

"In calculating the second part of the lodestar determination, the *time* reasonably expended," a district court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Pa. Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 232 (3d Cir. 1998). As noted in *Hensley*, lawyers are required to use judgment when billing their clients so as not to bill clients for "excessive, redundant, or otherwise unnecessary" hours. *Id.* at 434. Likewise, "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id.* at 434 (citations omitted). Ultimately, district courts have "substantial discretion in determining what constitutes . . . reasonable hours." *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).

The Bansal Affidavit includes a summary of the hours worked by the counsel involved in this litigation. These summaries were prepared from contemporaneous, daily time records regularly prepared and maintained by the law firm. Plaintiff's counsel reports 31.2 hours for work done at an hourly rate of $250.00. After reviewing the Bansal Affidavit and supporting documentation, it appears that Plaintiff's counsel is not requesting compensation for any time that was "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Having found the hourly rates and hours expended reasonable, the lodestar for Plaintiff's counsel is $7,800.00 for 31.2 hours of attorney work. Counsel's request for $7,483.75 as a percentage of recovery represents an amount less than the lodestar. Such an amount is consistent with other attorneys' fees awards which amounted to various multiples above the lodestar amount. *See, e.g., Mabry v. Hildebrandt*, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) ("In this Circuit, the

percentage of recovery award in FLSA common fund cases ranges from roughly 20-45%."); *In re Prudential*, 148 F.3d at 341; *see also Keller v. TD Bank, N.A.*, 2014 WL 5591033, at *16 (E.D. Pa. Nov. 4, 2014) (approving multiplier of "slightly above 3" in FLSA collective action). Therefore, the lodestar cross-check supports approval of the requested attorneys' fees.

Having considered the relevant factors and the lodestar cross-check, this Court approves the request for attorneys' fees, which the Court finds to be reasonable.

**CONCLUSION**

For the reasons stated herein, this Court finds the terms if the proposed Settlement Agreement to be fair and reasonable and consistent with implementation of the FLSA, and, therefore, approves the Settlement Agreement. This Court further finds that the request for attorney's fees is reasonable and awards Plaintiff's counsel attorney's fees in the amount of $7,483.75. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*